May it please the Court. Before this Court, the primary issue is whether or not the District Court Let me ask you a question, Mr. Wright. If I understand this system, there's a security at the 7 World Trade Center, there's a security turnstile and everybody entering the building has to go through that. And if I understand correctly also, the card that's passed over to the card reader there, that action is necessary to gain access to the building as well as to indicate the call information to the elevator, correct? I don't know. Well, I think the record reflected that you don't know. I thought the record was pretty clear. Well, I'm just, I'm not sure about entering the building versus entering the elevator area. Well, I mean, obviously you can enter the lobby, but to get past the lobby into the building, to go elsewhere in the building, you have to go through the security turnstile. That's correct. Okay. So why aren't you arguing that this is just like the key embodiment, which is covered by Claim 7 and is described in the specification? Claim 7 is not an assertive claim. We are here discussing the two independent claims. Yes, yes. But even if it's not an assertive claim, I thought it was, but let's assume it isn't. Well, why isn't the fact that there is such a Claim 7 and such a description in the specification indicate that the fact that you place a card over the card reader to gain access to the building that is beyond the lobby area, why isn't that indicate that this kind of action wasn't being disclaimed either in the specification or in the prosecution history? I don't know what is meant by the actual word key, so I can't, I don't feel comfortable answering that question. I believe that the error is that personal action is not disclaimed in any of the claims. So there is nothing... I know what your argument is. I'm asking you whether there's this, I'm wondering why you're not making this alternative argument. In other words, even if you had a card which was designed as an elevator call card, that was the only purpose of it, you know, and you place that over a card reader and that calls the elevator and tells you what, if that kind of action was not a hands-free action and was outside the claims, the specification seems to suggest that if the card reader has a dual purpose, to gain entry to the building and to call the elevator, that that's within claim one, because claim seven is a dependent claim, that you can be within the claims and still take a card out of your pocket, place it over the card reader as long as you're not taking an extra step to call the elevator. If it's just part of the building entry step, that's okay. Am I missing something? No, there's a classic claim differentiation argument. Yes, and I have to admit I am not familiar with that argument. I focused on what the district court did. The district court found a disclaimer and that was the basis of her claim construction. Well, but this bears on the scope of that disclaimer. I mean, certainly they were not disclaiming what was covered by claim seven, because claim seven continued to be there. And that may be true. I believe there's many additional arguments to show that there's no disclaimer. I don't think anything supports the disclaimer. The word personal action is only mentioned once in the specification and never again. So it doesn't surprise me that there's other additional arguments to show that there's no disclaimer, because nothing, nothing in the specification. Well, I thought maybe you weren't making the argument because there was something wrong with it. No, I, in all honesty, I didn't know the argument. I didn't know of the argument. I feel I have more than sufficient reasons and arguments to show why the district court completely made up the disclaimer. I can go throughout the opinion and show one mistake after another in how the opinion was written and how the specification was characterized. There's simply no basis. Let me answer something about the specification. In column four, lines about 28 or so, talks about hands-free, contactless, and independent of the orientation of the information transmitter. And I understand your argument about hands-free, contactless, and independent, not requiring some manipulation to press buttons or keys or switches or anything of that sort. What about this language that it's without orientation of the transfer? What does that mean? Well, in our view, that means no longer need the user hold it, position it, press buttons, and view it. So now with a dummy card, a preprogrammed card, the user no longer need viewing it or position it in any particular way. It's simply when it's brought within the recognition area, it's activated by the recognition device. And it's wrong to interpret that to refer to orienting the card over a reader. Correct. That's not mentioned anywhere about bringing it within so many inches of the reader. The recognition area is referred to throughout as just the area. Suppose you had to put the card in a slot. Suppose you had to take the card out of your pocket, as you would in entering a hotel room or a gas station. You had to put it in a slot so it could be read. Nowhere mentioned, but I would still believe that is not personal action in any way. That's not personal action? No. That doesn't have anything to do with the orientation of the card? Well, it's not mentioned, so we'd be speculating. Well, of course it's not mentioned specifically, but the question is what's meant by the broad disclaimer language. Well, one, there is no broad disclaimer language. And two, the only phrase that made its way into the claim construction was personal action. And now the question becomes, what did the spec mean by personal action? And I think the Court should just look at the one place it's mentioned in Column 2 of the patent on JA 82. And that paragraph that begins at line 49 through 54 is the sole mention of personal action. And from reading that one sentence, we learn quite a few things about personal action. First of all, it's not even clear personal action is even referring to the information transmitter embodiment. That's the first ambiguity. But the District Court tried to resolve that ambiguity. And what does the District Court do? She inserts a comma, a comma right before without any personal action being required by the passenger. And the District Court, of course, did that to make it seem clear that the clause is referring to the information transmitter embodiment. It's far from clear that that phrase even refers to both embodiments. That's the first mistake. The second mistake is we know carried by the elevator user is even in this sentence and in both of the claims. So carrying it, holding it in your hand, and bringing it into the recognition area cannot possibly be personal action. What does the District Court do in her opinion? She refers to not carrying it by the user, but carrying it on the passenger. On the passenger, nowhere mentioned in the patent, made up by the District Court as well. So the District Court did a little reconstruction to make it seem that this personal action clause was clear, applied to every embodiment, and was somehow associated with these other concepts that the Court has now raised, such as hands-free, contactless, and independent of the orientation. I don't see the association, first of all, of personal action with those other concepts. And as my brief pointed out, when you look at these phrases, and look how they were used in the amendments, and look at the references that were distinguished, it's very clear what the invention was distinguishing. It's perfectly appropriate to have a situation in which there is prior art which could have been distinguished on a narrower ground, and if it's distinguished on a broader ground, you're stuck with the distinction. I mean, isn't that pretty well established? That is a legal matter, but that's not reflected in these facts. Look at the amendment. So we can't just say, well, the prior art was more limited, so we're not going to worry about the broad disclaimer. Oh, I agree with that, but that's not what I'm saying. I'm saying let's look at what the representations actually were. And if you go to A320, A321, and A322, those are the only three pages of the file history that are relevant here to show that this applicant repeatedly distinguished the references, and there's only two, but repeatedly distinguished the references on the same basis, and that is reflected in the amendment itself. That is, the recognition device is actuating the information transmitter, not the other way around. That was the basis for distinguishing the references, and that is reflected in the amendment itself. So this is not a case, and I'm well familiar with those cases, where there is area in between that was unnecessarily given up. That's not the case here at all. This applicant was very careful to argue in support of the amendment that was actually made, and you'll notice that in my adversary's brief, they never even acknowledged the amendment. The district court mischaracterizes the amendment. The district court quotes the amendment on one page and then mischaracterizes it on other pages. What do you say personal action means? One, I think it's ambiguous. I don't know what the real definition of personal action is. I don't think anybody knows. But it appears to me that one plausible explanation is that the personal action is referring to the recognition embodiment, where there is no information transmitter. But it's not clear. I don't know the precise definition of personal action because that phrase is never used again. It is never mentioned in the file wrapper. It is not on the pages I just referred to. But it's in the specification, isn't it? Once. But it means something, and the question is what does it mean? I mean, it obviously doesn't mean the most conceivably broad application. Indeed, the district court admitted that because you could define personal action as the action of entering the building. That's personal action. You don't get into the building unless you decide to enter it. Yet she herself recognizes that's not what the phrase means. It doesn't cover coming in and approaching the machine. That's correct. But then where do you draw the line when the claim itself says that the passenger carries it? And the district court never dealt with that express claim language that the claim itself requires that the passenger carry the card and bring it, present it to the recognition area. The district court thought that was personal action. That's inconsistent with the claim. That's inconsistent with the amendment. That's inconsistent with the fact that the passenger must carry the card. It's a pre-programmed card. That's how the references were distinguished. That's what the specification is discussing. That's what's in the background of the amendment. Yes, but it's not a stretch to read personal action, hands-free, automatic, regardless of the orientation of the card, as not covering the situation in which someone takes the card out of the pocket and places it next to a card reader. That's a problem for you, because that action would seem to be pretty well within the scope of what was disclaimed. I completely disagree. It is a stretch, and it is divorced from A320, 321, 322. You could not make those statements that you just made if you look at the context of how… Well, since I have looked at the context and I did make the statements, I guess I could do it. Yes, and you did. But I think if you look at the fact that the references were distinguished specifically because they were activated by the information transmitter. They were manually operated. That was the distinction. There's nothing to connect the terms you just used with personal action. Nothing. So that's what we believe is the stretch, because the district court and OTIS are associating personal action with hands-free, independent of the orientation, contactless. But when you look at 320, 321, and 322, those words clearly mean that the user no longer need actuate, which is in the claim language. The information transmitter no longer is actuating the communication. It's now the other way around. What about page 325 toward the end of the amendment? The top paragraph says, to enable truly hands-free operation of elevator calls. So now it's not only hands-free, it's truly hands-free. Correct. But you're arguing that, no, no, truly hands-free still encompasses reaching into your pocket, taking the card in your hand, and moving it over the scanning device. Yes, because if you look at that phrase you just read, it's because of the actuation. None of the applied documents of record disclose or suggest actuation of the transmitting device recited in the combination of Independent Claim 1 to enable truly hands-free. And that's because both of the references require the user to press buttons or a selector or a mode selector or a 10-key pad in order to actuate the information transmitter. It does seem to me, reading through the record, both the specification and the prosecution history, that every place where there is some reference to hands-free or automatic, there is some association with some actuation or activity or keying or calling or something, not simply moving the card into proximity of a receiver. Correct. That is our argument. That was the point of our briefing, to show each of the quotations in their totality, to show that the district court did pluck these words out of context. Judge Lind, that is our argument. And it seems to me that that argument is the one thing that really reinforces that argument is the claim differentiation argument with respect to the key that you didn't make. So I'm left a little bit confused. I thought we had more than sufficient arguments in our briefing. I apologize I didn't present additional arguments based on Claim 7. But I do think that you have the point well in hand that in context the hands-free is talking about the actuation, not how it's presented in the recognition area. I'd like to reserve some of my time for rebuttal if there are no further questions. We'll reserve your time. And since we're giving Mr. Ray some additional time, Mr. Levine, if you run over a little bit, that will be all right. But don't take advantage of my kindness. All right. Thank you, Judge Land. I want to start off. May I ask you a preliminary question? Yes, sir. At 7 World Trade Center, if you want to get in, do you have to move the device over the glass top or could you move it on the side of the... It's got to be on the glass top. You have to move it over the glass top. Yes, sir. There's no way you can get activated without moving it over the glass top. Unless you talk a security guy into letting you in through the back door or something. Even if I took my device, my card, and moved it right next to the side panel, that wouldn't activate it. It wouldn't do it. Because there is no panel. It's just the side there. But the part of the reader, where the reader is, is right underneath the glass that's on top of it. And the top is fairly high. It's higher than a typical person's hip. It's 37 1⁄2 inches on top of that. If you want to activate, if you want to get an elevator, you've got to run it over some part of the glass. Correct. And the glass is a fairly small area. It's not the entire turnstile. It's a fairly small area there. And then you have to run your card within 1 1⁄2 to 3 1⁄2 inches over the top of this glass area. I want to start off... If the reader happened to be mounted lower, such that if a normal adult with a card and a wallet, walking right by would come within 3 or 4 inches of the reader without doing any action whatsoever, would that infringe? It could. Let me put it this way. It could be hands-free and it could be no personal action. There are other limitations here that the question of infringement depends on that are not at issue in this appeal. But you could have it in that way if it were on the side, for instance. So you're saying hands-free really means hands-free. Yes, sir. You don't touch it. But it seems to me even in the hypothetical I just suggested, which you seem to agree might raise an infringement question, you have to touch the card with your hand to put it in your wallet before you head off to work, do you not? Yes, sir. Well, or maybe two weeks earlier, but at some point you put the card in the wallet. So it's hands-free when you get to the building? It's hands-free to cause the actuation. What the amendment was about, and Schindler's lawyer is correct about this, is the amendment did a number of things, one of which was require that the recognition device actuate the information transmitter. So when it talks about truly hands-free, it's talking about hands-free. You don't have to do anything with your hands to cause the actuation, and that's only happening in the building. And if I may expand on that, in the Begley prior art, which is discussed at the beginning of the specification JA82, it discusses the disadvantages and discusses two that are notable here. Number one, that you have to take the card out and press buttons, which is something that's difficult if you don't have a free hand in order to operate the device. And number two, you've got to take this thing out of your pocket to look at the display. Each time, it's what happens when you have to use your hand to take it out of your pocket. With the Seven World Trade Center card, the operating the device is taking this card out and putting it over the top of this card reader that's on the turnstile. So there, if you don't have a free hand to operate the device, it's no different than Begley, where if you don't have a free hand to press the buttons, here in the Seven World Trade Center, if you don't have a free hand to take your card out or take your wallet with your card out and put it on top of the glass, you've got a problem. But that leads to the question of Claim 7. Yes, sir. In the discussion in the specification, you heard my questions about that. It seems to me you've got a pretty good argument that taking the card out of the wallet or placing the wallet next to the card reader is a personal action. It's not hands-free. It's within the scope of the disclaimer. But if you're placing the card there for a dual purpose, to gain entry to the building as well as to call the elevator, doesn't the specification suggest that that's not a personal action, that that's because there's no additional action required to call the elevator beyond what was necessary to get into the building? Do you understand my question? I understand the question, and I was going to actually start with that. Claim, obviously, it wasn't raised by Schindler below or on appeal, so there's a waiver issue. But to answer your questions, two points. Number one, the district court interpreted the language of Claim 7, and the district court interpreted a key having a code, which is the relevant language there, as a device configured to provide signals for communication to open a lock. In other words, to do so, it's not if you have to take your hand out, take a lock or a key, put it inside of a lock with your hand, then it's not hands-free and it's not covered by Claim 7. What is covered is if you have a card that when you go close to a door, within a couple of feet, let's say, it lets you in the door, opens the lock, as well as makes the elevator call. What's happening here is that this same card and the same card reader is used for a dual purpose, right? You get into the building by putting the card next to the card reader, and you also call the elevator. Am I correct about that? You are. The difference is, Your Honor, is that if you were just keeping your card in your pocket, and let's say the device range was greater, it was 5 feet or 10 feet instead of 3 inches, and all you have to do is walk into the turnstile area and it reads your device and at the same time makes an elevator call and opens the turnstile gate, then it would be without personal action. I don't understand that. I'm sorry. Look at Column 5 beginning at 26. It talks about it being not a separate card, but it's part of the key to the building, and it suggests that that's covered. Well, yes, but it's not just any old key. It's coded key means. So it's not necessarily a physical key that opens up a lock. What it's referring to there, what it has to be referring to, is a different kind of key, which is a key where you get near it, it opens the lock. And, Your Honor, the reason we know that is because of the prosecution history, J.A. 325. It's interesting that Mr. Rees said there are three pages and pointed to 320, 21, and 22, and Judge Lind corrected him and said, what about J.A. 325? And the reason J.A. 325 is not just important but critical to addressing your question on Claim 7 is because the language of J.A. 325 is with respect to Claim 7. So if you look at the top paragraph there, this is the one, J.A. 325. So it says that the point in the key reference that Judge Lind referred to is to enable truly hands-free operation of elevator calls. And then it says, applicants respectfully submit that no proper combination of the applied documents of record can even arguably render obvious the present invention as recited in Claim 7. And if you look earlier than that, you can see that there was a rejection that it's not only Claim 1 but Claim 7. And 324 starts the discussion of Claim 7. So the applicant in the prosecution history directly said that even as to Claim 7, which is the one that would be the support for this potential claim differentiation argument, there was a specific disclaimer that Claim 7, when you're talking about the coded key means, it's one where it's truly hands-free operation. And there's no way to reconcile that with a card where you have to take it out of your pocket or take your wallet out of your pocket and put it on top of the turnstile in order to make it work. That is not truly hands-free. You're saying that the key that's claimed in Claim 7 can open and unlock the door without the use of hands? Absolutely. Absolutely. In fact, the district court talked about that on page JA54. It gives an example of that, and it says an example that occurs to the court, though it is not an embodiment described in the patent, would be an automobile key that when it comes in the effective range of the recognition device for an elevator in a multi-story garage, calls that elevator and is sent to the correct floor for parking. So it gives an example of that. And I've seen this in cars, too, where you have the key to the car, and in some cars now you don't have to put it inside the lock anymore. You can keep it in your pocket, and you go to the car and you press, as long as it's within the range, you press the start button and the engine starts. That's the kind of key. Let me ask you this one. Suppose that we reject that construction of the specification in a Claim 7, and we were to say, just hypothetically, I know you don't agree with this, but hypothetically we're talking about having to put a key in a lock or putting a key next to a car door. Okay? Let's suppose that's what they're talking about in Column 5 and in Claim 7. Just hypothetically, do you then lose? No, because claim differentiation is a guide, it's not a rule, so you have to look at the other evidence here. And the other evidence is the prosecution history and the specification where the applicant's stating over and over and over again, truly hands-free, contactless, and contactless would have no meaning. That could be interpreted to mean no additional action beyond what the person would have to take to enter the building. It could mean no additional action is necessary to call the elevator. That's a possible construction, right? Well, except that Claim 7 is dependent on Claim 1. The distinction of Begley was what do you do if you have no free hand, and if you don't have a free hand to press buttons, you don't have a free hand to put a key in a lock either. And that's why differentiation is just a guide. But I understand you're saying that hands-free means literally you don't have to use your hands at all in order to operate this. Is that right? Yes, sir, you keep it in your pocket, you walk into the building, you walk toward the elevators. Well, let me ask you something. Suppose you had a way in which maybe you can do this. You just put on the back of your hand all the stuff, and then you just walk up. The only thing you have to do with your hands is you have to take your gloves off, if you're wearing gloves. But once you get past that, as long as you get within a certain range, it's automatic. Is that hands-free? You'd say no, I suppose, because you have to involve your hands somehow. Well, if there's something strapped on your hand, and you're just walking through, keeping your hands on your side, and it's reading it from a sufficient distance away, I don't think that's a problem. But if you had to raise your arm a little bit or raise your hand, that would not be hands-free. Correct, because then you'd have the Begley problem with what do you do if you have no free hand and why it is that this patent and this invention is different than the prior art such as Begley. And the reason, I believe, for the district court's reference to no personal action, which is synonymous with the patent's, the applicant's, continued reference to hands-free, automatic, contactless, et cetera, is you can't have some situation where someone tapes it to their elbow and then moves their elbow around and says, aha, it's hands-free. It's still personal action even if you have put it on your elbow as opposed to your hand. Is there anything in the prosecution history or any place in the prosecution history where Schindler used the phrase personal action? No, sir. The only place where that appears then is in the spec in that one paragraph. Correct, column four. In that paragraph, it talks about the advantages achieved by the invention reside in the fact that the desired journey destination is communicated automatically to the elevator control by the information transmitters carried by the elevator users or by the recognition features of the elevator users. That's the fingerprint embodiment. Without any personal action. It seems to me that the phrase without any personal action being required refers to both of those embodiments, both the embodiment where the information transmitter is carried and where the recognition of features triggers the call. Yes, sir. Well, it seems to me then that raising one's hand to a reader, which is what the recognition of features embodiment entails, is not what is meant by personal action. There isn't enough detail in the patent, in the specification, as to the, I wouldn't call it the fingerprint embodiment, it's the feature recognition embodiment, as to what has to occur for someone to use that embodiment. It's not covered by the claims. I could certainly see one of the things that's mentioned as an example of optical recognition is feature recognition, looking at the features of someone's face. That's something that I believe you can do just by having a camera with a computer there too that works out. But it does record a fingerprint. Suppose to activate it you have to blink your eyes. I'm sorry. That's personal action, I suppose. Suppose it somehow was all set up to register your eyes but to make sure they get it right, they say, when you get in front of the device, you've got to close your eyes and open them. I suppose you'd say that's personal action because closing your eyelids is certainly personal action. Sure, and your honor, I'm not going to say... I find it hard to believe that that kind of little detail not involving anything related really to the operation of the device is what they had in mind. I think what they had in mind is what they said over and over again in the specification and the prosecution history, which is hands-free, automatic, contactless, and independent of orientation. It's repeated over and over again, and that's what's used as the basis for getting the patent over the prior art. I suppose you would have to say that my participation in this oral argument couldn't be hands-free because I had to lift the briefs and move them from this pile to directly in front of me. You'd say that's not hands-free. Sure, but what's relevant... Even though assuming I sat the whole time once I did that like this. Sure, but what's relevant here is using your hands in order to cause the actuation to occur and the device, the recognition device, does not actuate the information transmitter or the card unless you use your hands and then move it to that right spot. If I may make one more point, and that is the proposal that Schindler has, which is get rid of the reference to the personal action as well as the reference to electromagnetic waves, what that ends up giving you is you could have a card that has to have contact. In other words, a smart ID card or a contact card, which is described at JA 217, where you have a card and you have to physically put it right on something. There has to be contact, and that's covered by their interpretation because their interpretation is simply no buttons. As long as there are no buttons, you're okay. That's directly contrary to these repeated statements over and over again that not only is it hands-free and automatic, but contactless. Thank you, Your Honor. All right, thank you very much. Mr. Ray, you have indeed the final word. Thank you, Your Honor. First of all, I want to make sure the record's clear. We did assert all 14 claims. All 14 are at issue. But obviously I was focusing on information transmitter and recognition device, which is in the two independent claims. But the one example that was given, one example that the district court did give with respect to Claim 7, JA 54, was the hotel room. Specifically says one familiar example would be the card key that opens a hotel door. And we all know how those work, and that is given as an example of the Claim 7 embodiment. By the district judge? By the district court judge, JA 54. So her opinion is completely inconsistent. Page by page she waffles on personal action because it's not clear what personal action is, because personal action is never... I don't think it's fair to say that she waffles. Well, I can... I don't think a district judge waffles. Well, what she... I mean, if that's not the right word. She sometimes correctly explains what the personal action is, and then two pages later adds additional requirements to personal action. So she understood in the background that personal action, no personal action was required because the information transmitter does the actuation. She understood that and says, so that no personal action is required. So that's an example of where the district court said it correctly. You argued earlier that the distinction that was being made with personal action is that you don't need to use your hands to actuate anything. And that repeatedly throughout, wherever it says hands-free, it's talking about no need to actuate something. Correct. But in the invention, clearly is actuated by the receiver triggering the transmitter. Correct. The recognition device actuates the passive transmitter. And that occurs when you move the card within range. Present it within range. How about moving? So again, you have some personal action presenting the card to the recognition device in order to actuate. Is there really a distinction there between moving the card to the recognition device to actuate or moving a button to actuate? In both cases, you're using your hand to actuate. There's a major distinction, and that's reflected in the amendment and in the remarks to the amendment. Major distinction. Begley and Kamaki, both of them required actuation through the pressing of buttons. Those are the only two references that were distinguished, and they're expressly distinguished on the grounds of manually actuating through the pressing of buttons or selectors. Is it the use of fingers? Is that the critical thing? Whether you use your fingers, or you just raise your arm including your hand? No, what's critical is which device is actuating the communication. That's what's reflected in the claim amendment. What's critical isn't exactly how the actuation is occurring. What's critical is which of the two devices is beginning the communication. And the distinction that was made in the claims and in the remarks and in the argument was no longer will the information transmitter actuate the communication. It now will be actuated by the recognition device. That's the distinction in the claim. So if in these prior inventions, with those systems, if you had to take the card and put it next to a card reader, you would say that's being disclaimed. If the actuation comes from the card being placed next to the card reader, you're saying that that would be within the disclaimer. I can't tell, though, of those two devices, which one's actuating the communication electronically. If the actuation is occurring because of the card, rather than because of the receiver, if I understand what you're saying, that you agree that if the actuation is coming from the card and if there is a requirement that you place the card next to the card reader to start the actuation, that that's within the disclaimer. I don't think your scenario electronically actually explains who's actuating. Just because they're brought together doesn't tell me which of the two is actuating. The signal is coming from the card. Let's assume the signal is coming from the card. If the signal is initiated from the card, that is disclaimed by the amendment. Even though the card is placed next to a card reader rather than buttons being pushed. Yes, because the actuation is by the information transmitter. That's what was distinguished. Correct. It doesn't matter whether the actuation is by buttons or by kicking it or stamping on it. The point is the initiation of the communication is initiated by the recognition device so that the card can now be passive with no buttons, no display, like a little passive card that we've all become familiar with today. That was the distinction, not whether it was buttons or not, but the actuation no longer came from the information transmitter. That distinguished the references. That was made express, and nowhere did personal action get associated with that concept. Thank you, counsel, for both sides. The case is submitted.